IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| PRESTON ANDREW BARNHART, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 16-3423-CV-S-SRB |
| JIM ARNOTT, | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment. (Doc. #63). For the reasons discussed below the motion is granted in part and denied in part.

I. **Background**

On December 2, 2015, Plaintiff was admitted to Cox South Hospital in Springfield, Missouri, after he attempted suicide by overdosing on methamphetamines and valium. (Doc. #68, p. 5). At Cox South, a psychiatrist prescribed Trileptal, an anti-seizure medication, and Zoloft, an antidepressant, for Plaintiff after diagnosing Plaintiff with "[s]timulant disorder with methanphetamines, amphetamine-induced mood disorder" and "[b]ipolar disorder, type 1, most recent episode manic, severe, nonpsychotic." (Doc. #68, p. 5; Doc. #68-5, p. 5). After Plaintiff's transfer to Cox North Hospital, another psychiatrist prescribed Plaintiff with Trileptal, Zoloft, and Abilify, an antipsychotic medication sometimes used to treat bipolar disorder. (Doc. 68, p. 6; Doc. #68-5, p. 16). On December 7, 2015, Plaintiff was discharged. (Doc. 68, p. 6). On December 16, 2015, Plaintiff was arrested and taken to Greene County Jail ("GCJ"), which does not have a psychiatrist on staff. (Doc. #69, p. 6; Doc. #68-1, p. 3). Defendant Jim Arnott

("Arnott") is the duly elected Sheriff of Greene County, Missouri. Defendant Jason Dwight Wilkins, MD, ("Wilkins") is the Medical Director for GCJ. (Doc. #68, p. 16).

During Plaintiff's intake at GCJ, he indicated on a medical questionnaire that he suffered from bipolar disorder and attention-deficit/hyperactivity disorder ("ADHD") but did not indicate that he was taking any prescription medications at that time. (Doc. #69, p. 7; Doc. #63-5, p. 2). Based on Plaintiff's medical questionnaire responses, Plaintiff was briefly placed on suicide watch. (Doc. #63, p. 3; Doc. #63-1, p. 13). On December 27, 2015, having not yet received any medication during his time at GCJ, Plaintiff submitted a Health Services Request form to GCJ officials on which he checked "Mental Health" as the type of requested health service and wrote "I need to talk to someone In the mental health field as soon as I possible [sic] can Thank you." (Doc. #73, p. 13; Doc. #68-8, p. 1). Two days later Plaintiff was seen by "a graduate student 'psychological intern.'" (Doc. #73, p. 13). The intern's treatment notes indicate that Plaintiff informed the intern that he "takes Tegretol, Zoloft, and Adderall" and that Plaintiff had prescriptions for these medications filled within the last thirty days but that Plaintiff was unable to identify the pharmacy that filled those prescriptions. (Doc. #73, p. 13). Plaintiff received no medication at this time.

On January 25, 2016, Plaintiff submitted another Health Services Request form on which he checked "Mental Health" as the type of requested health service and wrote "I have been trying to recieve [sic] my mental Health meds for over a month." (Doc. #73, p. 14). The next day, another graduate student intern met with Plaintiff. (Doc. #73, p. 15). Plaintiff did not receive medication. On March 16, 2016, Plaintiff submitted a third Health Services Request regarding his mental health in which he wrote "I feel like killing myself." (Doc. #73, p. 22). Plaintiff was placed in observation, but there was no change to Plaintiff's medication. (Doc. #73, p. 23).

2

Plaintiff was then placed in isolation and evaluated by a student intern, after which he began receiving Zoloft. Plaintiff never received other previously prescribed medication during his eleven-month incarceration at GCJ.

On March 9, 2018, Plaintiff filed his Second Amended Complaint. (Doc. #43). Plaintiff alleges his mental health deteriorated because of the delayed Zoloft treatment and the lack of other medication. Plaintiff also alleges Defendant's actions or inactions caused his extreme anxiety and inability to control his conduct. Plaintiff brings three claims. Plaintiff brings Count I against Defendants Wilkins and Arnott[1] under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs in violation of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff brings Count II against Defendant Arnott under § 1983 for failure to train or supervise jail personnel to ensure competent and adequate medical treatment in violation of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments. Plaintiff brings Count III against Defendant Greene County, Missouri, under § 1983 for an alleged custom or practice of delaying or denying inmates necessary mental health treatment and medication in violation of Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments. Defendants bring the present motion for summary judgment, arguing 1) that no juror could reasonably find that Plaintiff had a serious medical need while detained at GCJ, 2) that no juror could reasonably find that either Defendant Wilkins or Defendant Arnott were deliberately indifferent to any such need, 3) that Defendants Wilkins and Arnott are entitled to qualified immunity, and 4) that no juror could reasonably find that a custom or practice of Defendant Greene County, Missouri, caused the alleged violation of Plaintiff's constitutional rights.

---

[1] Plaintiff concedes that Defendant Arnott is entitled to summary judgment on Count I. (Doc. #69, p. 23 n.2).

## II. Legal Standard

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While a plaintiff opposing summary judgment "may not simply point to allegations in the complaint," *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015) (internal quotation marks and citation omitted), the "standard for avoiding summary judgment" is "relatively lenient." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 479–80 (2013) (citing *Anderson*, 477 U.S. at 248). The purpose of summary judgment "is not to cut litigants off from their right of trial by jury if they really have issues to try." *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)); *see also Melvin v. Car-Freshener Corp.*, 453 F.3d 1000, 1004 (8th Cir. 2006) (Lay, J., dissenting) (quoting *Poller*, 368 U.S. at 467).

## III. Discussion

### A. Count I (against Defendant Wilkins): Deliberate Indifference to Plaintiff's Serious Medical Need

"'Deliberate indifference' to a prisoner's serious illness or injury constitutes cruel and unusual punishment under the Eighth Amendment."[2] *Vaughn v. Gray*, 557 F.3d 904, 908 (8th

---

[2] The Eighth Amendment applies to the several states through the Due Process Clause of the Fourteenth Amendment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947)).

4

Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A prison official is deliberately indifferent if she 'knows of and disregards' a serious medical need or a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016) (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009)). A plaintiff bringing such a claim "must prove 'that he suffered from an objectively serious medical need' and 'that [Defendants] actually knew of but deliberately disregarded his serious medical need.'" *Id.* (quoting *Scott v. Benson,* 742 F.3d 335, 340 (8th Cir.2014)). "When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 757 (8th Cir. 2016).

"The deliberate indifference standard has both objective and subjective prongs." *Id.* (citing *Nelson*, 583 F.3d at 529). Regarding the objective prong, "[a] serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (quoting *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995)). Regarding the subjective prong, "[d]eliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[W]hile a deliberate-indifference claim requires the establishment of a defendant's actual, subjective knowledge, such knowledge can be demonstrated with circumstantial evidence." *Vaughn*, 557 F.3d at 908–09 (citing *Farmer*, 511 U.S. at 842). "Whether an inmate's condition is a serious medical need and

5

whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." *Schaub*, 638 F.3d at 915 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Defendant Wilkins argues he is entitled to summary judgment on Count I because "[o]fficials do not violate an inmate's due process or Eighth Amendment rights when, in the exercise of their professional judgment, they refuse to implement an inmate's requested course of treatment." (Doc. #64, p. 8) (citing *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)). Plaintiff argues that a reasonable juror could find that Defendant Wilkins "knew that Plaintiff suffered from an objectively serious medical condition—bipolar disorder—for which he had been prescribed Zoloft, Trilpetal, and Abilify one week before he began his incarceration" at GCJ and that Defendant Wilkins was deliberately indifferent to this serious medical need by "refus[ing] to give Plaintiff any medication other than an anti-depressant." (Doc. #69, pp. 21–23).

Plaintiff has produced evidence from which a reasonable juror could find that Defendant Wilkins was deliberately indifferent to a serious medical need of Plaintiff. First, there is a genuine dispute of material fact as to whether Plaintiff had a serious medical need while incarcerated at GCJ. Plaintiff has put forth evidence tending to show that psychiatrists diagnosed Plaintiff with bipolar disorder for which they prescribed Plaintiff Zoloft, Trileptal, and Abilify shortly before Plaintiff's incarceration at GCJ. A reasonable jury could find that this diagnosis and these prescriptions, taken together with Plaintiff's other evidence, show a serious medical need. Second, there is a genuine dispute of material fact as to whether Defendant Wilkins knew of Plaintiff's condition and deliberately disregarded it in violation of Plaintiff's constitutional rights. Plaintiff has produced evidence tending to show that Defendant Wilkins had access to Plaintiff's medical records and that Defendant Wilkins, the only licensed physician at GCJ and

6

Case 6:16-cv-03423-SRB   Document 74   Filed 01/31/19   Page 6 of 14

the only person authorized to prescribe medication for inmates, visited Plaintiff only once during his eleven-month incarceration at GCJ. Plaintiff has also produced evidence tending to show that Defendant Wilkins deliberately chose not to provide Plaintiff with the combination of medication prescribed for him by the psychiatrists at Cox North and South, despite Plaintiff's multiple requests for medical services and his placement in a suicide cell for observation. Summary judgement is therefore not warranted on Count I.

### B. Count II (against Defendant Arnott): Failure to Train or Supervise

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Supervisors can . . . incur liability for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (internal quotations and alterations omitted). To impose supervisory liability, a plaintiff "'must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations' or 'that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts.'" *Saylor*, 812 F.3d at 644 (quoting *McDowell v. Jones,* 990 F.2d 433, 435 (8th Cir.1993)). A failure to train claim "serve[s] as a basis for § 1983 liability" only when "the need for more or different training [was] so obvious and the inadequacy so likely to result in the violation of constitutional rights, that [the municipality] . . . can reasonably be said to have been deliberately indifferent." *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (internal quotation marks omitted) (quoting *Canton*, 489 U.S. at 390); *Pehriz v. Kansas City Bd. of Police Comm'rs*, No. 4:13-00654-CV-W-HFS, 2015 WL 5604441, at *12 (W.D. Mo. Sept. 23, 2015). Claims

7

alleging a failure to supervise and those alleging failure to train "ultimately require the same analysis," which is "the deliberate indifference standard." *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998).

Defendant Arnott argues he is entitled to summary judgment on Count II because "[c]onclusory allegations such as that Sheriff Arnott was in charge of the GCJ are insufficient to demonstrate the involvement or knowledge necessary to make Sheriff Arnott liable for the conduct of others" and because "Plaintiff does not claim that Sheriff Arnott is a doctor, or that he was involved in prescription decisions at the GCJ, or that he ever interacted with Plaintiff at the GCJ." (Doc. #64, p. 7). Plaintiff argues that "a reasonable juror could find that Sheriff Arnott has failed to train or supervise" medical staff he has hired "to oversee mental health to ensure they follow Greene County Jail Policy on verifying inmates' current prescriptions and providing mood stabilizers to inmates diagnosed with a mood disorder." (Doc. #69, pp. 23–24).

Defendant Arnott is entitled to summary judgment on Count II. First, Plaintiff has not produced sufficient evidence to create a genuine issue for trial. Viewed in the light most favorable to Plaintiff, the evidence is such that a reasonable juror could not find Defendant Arnott personally liable for a failure to train or supervise causing Plaintiff's alleged injury. In particular, Plaintiff produced only scant evidence linking Defendant Arnott personally to the alleged constitutional violations. Plaintiff has not produced evidence of Defendant Arnott's "personal involvement in a constitutional violation" or of any "corrective inaction" by Defendant Arnott that "amounts to deliberate indifference to or tacit authorization of the violative practices." *See Langford*, 614 F.3d at 460. Plaintiff points to Defendant Arnott's position as Greene County Sheriff and the fact that, as such, Defendant Arnott gives final approval for all GCJ policy. However, this evidence does little more than "simply point to allegations in the

8

complaint," which is not sufficient to survive summary judgment. *Robbins*, 794 F.3d at 993. There is thus no genuine dispute of material fact on Count II. Second, Defendant Arnott is entitled to judgment as a matter of law on Count II. A § 1983 plaintiff must demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution," *Iqbal*, 556 U.S. at 676. As discussed above, Plaintiff has not done so. Accordingly, this Court must grant summary judgment on Count II. *See* Fed. R. Civ. P. 56(a).

### C. Qualified Immunity

Under the doctrine of qualified immunity, a government officer sued in an individual capacity is "shielded from liability for civil damages" when performing discretionary functions unless the officer's conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified immunity "is an immunity from suit," the issue "should be resolved 'at the earliest possible stage in litigation' to ensure that insubstantial damage claims against government officials are resolved 'prior to discovery.'" *Johnson v. Moody*, 903 F.3d 766, 773 (2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

To defeat a qualified immunity defense, a plaintiff must show that: 1) "the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right," and 2) that "the right was clearly established at the time of the deprivation." *Saylor*, 812 F.3d at 643 (internal quotation marks omitted) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). Regarding prong two of the qualified immunity analysis, "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nord v. Walsh Cty.*, 757 F.3d 734, 739 (8th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739

(2002)). To make this showing "it is unnecessary to have 'a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)). District courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Defendant Wilkins argues he is entitled to qualified immunity[3] because "inmates do not have a clearly established right to force public officials to adopt a particular course of treatment." (Doc. #64, p. 15) (citing *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994)). Plaintiff argues that Defendant Wilkins is not entitled to qualified immunity because "[t]he constitutional obligation to provide medical care to those in custody has been clearly established for decades," (Doc. #69, p. 25) (citing *Estelle*, 429 U.S. at 106), and, among other things, "the knowing failure to administer prescribed medicine can itself constitute deliberate indifference." (Doc. #69, p. 26) (quoting *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795–96 (8th Cir. 2006)).

Here, Defendant Wilkins is not entitled to qualified immunity because both prongs weigh in favor of Plaintiff. Regarding the first prong, the facts, viewed in the light most favorable to Plaintiff, demonstrate a deprivation of Plaintiff's constitutional rights. Plaintiff does not claim that he has "a clearly established right to force public officials to adopt a particular course of treatment," (Doc. #64, p. 15), as Defendants suggest, nor does this Court hold that Plaintiff has such a right so-characterized. Instead, as discussed in Section III.A. *supra*, Plaintiff claims that his diagnosed mental illness was a serious medical need and that Defendant Wilkins deliberately disregarded this need through a lack of constitutionally adequate treatment while Plaintiff was

---

[3] Because this Court has granted summary judgment in favor of Defendant Arnott on Counts I and II, the Court need not decide whether Defendant Arnott is entitled to qualified immunity.

10

incarcerated at GCJ.  Plaintiff supports this claim with evidence of his diagnoses and prescriptions shortly before his incarceration; of his placement on suicide watch; of his multiple health services requests during his incarceration; of unlicensed student interns—rather than Defendant Wilkins himself—visiting Plaintiff in response to his requests; of Defendant Wilkins's failure to review the notes of the student interns who had visited Plaintiff; of Defendant Wilkins seeing Plaintiff in person only once during Plaintiff's eleven months of incarceration, after Plaintiff had been incarcerated for six months and made three separate requests for health services; of Defendant Wilkins's access to Plaintiff's medical records showing his diagnoses and prescriptions; and of Defendant Wilkins's choice not to treat Plaintiff's diagnosed bipolar disorder with that set of prescriptions.[4]  Taken together and viewed in the light most favorable to Plaintiff, these facts demonstrate Defendant Wilkins's deliberate indifference to Plaintiff's serious medical need in violation of Plaintiff's rights under the Eighth Amendment.

Regarding the second prong, "Plaintiff's constitutional right to adequate medical care while in custody" was clearly established when the challenged conduct happened.  *See Dadd v. Anoka Cty.*, 827 F.3d 749, 756 (8th Cir. 2016) (citing *West v. Atkins*, 487 U.S. 42, 55 (1988)).  The Supreme Court has long held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Eighth Circuit has rejected arguments based on the assertion that an inmate "was seen

---

[4] The Court again notes that Plaintiff was temporarily given Zoloft, which was one of the medications prescribed by psychiatrists at Cox North and South.  However, it is undisputed that "Plaintiff complained that taking Zoloft by itself was making him feel worse." (Doc. #68, p. 14).  Plaintiff was also prescribed Trileptol and Abilify at Cox North and South but was never given a mood stabilizer, anti-seizure medication, or antipsychotic medication while incarcerated at GCJ.

11

numerous times by doctors and that his claim was therefore based on his disagreement with those doctors as to the appropriate medical care" rather than on deliberate indifference to the inmate's serious medical need. *See Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980). Eighth Circuit precedent further holds that the Eighth Amendment prohibits "deliberately deny[ing] [an inmate] access to medical care and fail[ing] to carry out treatment prescribed by his doctors." *Johnson v. Hay*, 931 F.2d 456, 461 (8th Cir. 1991) (citing *Cummings*, 628 F.2d at 1067–68). Almost a decade before Defendant Wilkins's alleged misconduct, the Eighth Circuit recognized that "the knowing failure to administer prescribed medicine can itself constitute deliberate indifference" to an inmate's serious medical need. *Phillips*, 437 F.3d at 796 (citing *Johnson*, 931 F.2d at 461). The law governing Defendant Wilkins's conduct was clearly established at the time of that conduct. Defendant Wilkins is therefore not entitled to qualified immunity on Count I.

### D. Count III (against Defendant Greene County, Missouri): Municipal Liability

A municipality is directly liable under § 1983 when an act done pursuant to its official policy or custom violates a person's federal rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). For § 1983 purposes, custom and policy are not the same. *Corwin v. City of Independence*, 829 F.3d 695, 699–700 (8th Cir. 2016). A policy may arise either from a municipality's official promulgation or through a single act by a decisionmaker "who possesses final authority to establish municipal policy with respect to the action ordered." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007). In contrast, to demonstrate a custom a plaintiff must show:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).  In particular, a municipality may face direct liability under § 1983 for its "failure to train its employees in a relevant respect" if such failure amounts to a policy or custom of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Defendant Greene County argues it is entitled to summary judgment on Count III because "Plaintiff cannot point to any particular policy, custom, or training that he claims resulted in a violation of his federal civil rights, essentially because Plaintiff merely blames Greene County for not being able to write his own prescriptions while in the GCJ," (Doc. #64, p. 16), and because "Plaintiff has pointed to no evidence to suggest an unconstitutional custom, and has not for instance, pointed to any inmate other than himself as supposedly suffering a deprivation." (Doc. #72, p. 4).  Plaintiff argues that "a reasonable juror could find that Green[e] County, Missouri[,] has an unconstitutional custom of denying medicine to inmates with serious mental illness" and that, "[g]iven [Defendant Wilkins's] repeated violations of Greene County Jail Policies, . . . a reasonable juror could find that Greene County has failed to train its Medical Director to provide medication the County's own policies require."  (Doc. #69, p. 27–30).

Here, a reasonable juror could find that a custom of Defendant Greene County amounted to deliberate indifference to the serious medical needs of inmates and caused a violation of Plaintiff's constitutional rights.  There is a genuine dispute of material fact as to whether the

13

manner in which the GCJ medical team addresses the medical needs of mentally ill inmates is a custom that rises to the level of deliberate indifference. Plaintiff has produced evidence tending to show that it is the practice of GCJ to have inmates' requests for health services evaluated by non-physician student interns, that the mental health staff at GCJ are overseen by someone with no medical training instead of by Defendant Wilkins, that Defendant Wilkins does not regularly review health records of inmates at GCJ, that Defendant Wilkins makes decisions regarding inmates' medication without personally visiting the inmates, that GCJ has no central drug formulary, and that there is no licensed psychiatrist on staff at GCJ. This and other evidence provided by Plaintiff, taken together and viewed in the light most favorable to Plaintiff, creates a genuine dispute of material fact as to whether a custom or practice of Defendant Greene County constituted deliberate indifference to the constitutional rights of inmates at GCJ and caused Plaintiff's alleged injury. Summary judgment is not warranted on Count III.

## IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment (Doc. #63) is granted in part and denied in part. The motion is granted as to Defendant Arnott on Count I and entirely on Count II. The motion is denied as to Defendant Wilkins on Count I and as to Count III.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: January 31, 2019